

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-26-00025-CV

CITY OF SULPHUR SPRINGS, Appellant

V.

LUMINANT MINING COMPANY, LLC, LUMINANT GENERATION COMPANY, LLC, VISTRA CORP., AND MATTHEW GOERING, Appellees

On Appeal from the 62nd District Court
Hopkins County, Texas
Trial Court No. CV45943

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin
Dissenting Opinion by Justice van Cleef

MEMORANDUM OPINION

The City of Sulphur Springs brings an interlocutory appeal[1] of the trial court's grant of a temporary injunction to Luminant and parties aligned with Luminant.[2]

In November 2019, Luminant deeded the site of an abandoned coal and lignite mine to the City. The property conveyed is roughly 5,000 acres. The deed contains a provision, known as a restrictive covenant, restricting the City's use of the property. In the broadest of strokes, Luminant is in the electrical power business,[3] and the restrictive covenant has to do with electrical power. In 2025, the City sought to be let out of the restriction so that the land could be used for a data center with an on-site power plant.[4] On April 3, 2025, Luminant wrote that "it is highly unlikely that the commercial generation restriction will be lifted, save for an extraordinarily aggressive all-cash bid." Luminant added: "If that works for you, please reply

---

[1]The Texas Legislature authorized interlocutory appeals of trial court temporary injunction orders via Section 51.014 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (Supp.).

[2]Luminant Mining Company, LLC, Luminant Generation Company, LLC, and Vistra Corp., present a unified brief. We refer to them collectively as Luminant for that reason, and because the two named Luminant entities were the grantors on the deed at issue.

[3]The City's original petition in the trial court alleged that two named Luminant entities

> are companies in the energy business who mine coal, lignite, and other natural resources and then . . . generate the resources into electricity or other forms of energy. Defendant Vistra Corp. is the parent company of both Luminant Defendants, as well as many other subsidiary companies in business in all areas of the generation, production, storage, and sale of electricity in Texas as well as across the nation.

That summary is consistent with the testimony of Amy Simcox, Vistra's Managing Counsel of Real Estate: "Vistra is an integrated generation and retail power company. We operate in over 20 states."

[4]The City initially asked Luminant if it would provide power for the data center development. Luminant declined. The City, at one point, indicated that the data center's on-site power plant could generate two-to-three gigawatts of electricity, but the City and the data center company later testified that the power plant need not be that large. The data center company is not a party to this appeal.

with an indication of your interest."[5]  The City's April 11, 2025, reply (in other words, the City's bid) was met with an April 14, 2025, rejection by Luminant.  Litigation ensued in October 2025.  The City sued to get out from under the restrictive covenant.[6]  Luminant countered, seeking among other things "temporary and permanent injunctions enforcing the [c]ovenant."  Luminant contended then (and contends still on appeal) that it "forwent significant financial gain that they could have realized through a future market sale of the [p]roperty."  Both sides disputed the extent of the restriction imposed by the restrictive covenant by fighting over the meanings of the words and clauses in the restrictive covenant.

On February 10, 2026, the trial court entered a temporary injunction against the City's proposed use, pending a trial set for September 2026.

On appeal, the City questions first whether the trial court should have issued a temporary injunction, and second, whether the trial court's injunction order sufficiently set out the basis for the injunction.

The City's first point brings the battle over the interpretation of the restrictive covenant to this Court.[7]  Luminant initially responds that the trial court's injunction order should be affirmed

---

[5]In the same vein, on April 2, 2025, Luminant had written, "[W]e are not willing to remove the deed restriction without significant compensation in return.  If that is something you would like to discuss we can consider any proposals but for now we cannot consider removing the restriction."

[6]The City's original petition asked to have the restrictive covenant declared "void" and "unenforceable."

[7]The restrictive covenant states,

> **Restrictive Covenant**:  Purchaser covenants that the Property will not be used for the commercial production, commercial generation or commercial storage of electricity in any form, nor will it be used for the siting of a commercial power station or energy storage facility of any kind.  This covenant restricting any use of the Property to commercially generate, produce or store electricity or to otherwise site a power station or energy storage facility, in any form or of any kind, shall be a

because what the City has in mind would breach any interpretation of the restrictive covenant. Luminant asserts that this Court should *not* review the trial court's interpretation of the restrictive covenant, but instead should leave interpretation to be settled at trial: "[T]he construction issue [meaning interpretation] is a merits question inappropriate for resolution at the injunctive stage, not on this interlocutory appeal." Nonetheless and ultimately, Luminant responds to the City's contentions regarding the interpretation of the restrictive covenant with reasons why, in Luminant's view, this Court should review the trial court's interpretation of the restrictive covenant and interpret it the same way.

Much of the interpretive battle hinges on what is or is not "commercial" and on what can or cannot be done on-site.[8] Under Luminant's view (which, it asserts, is the trial court's view), the restrictive covenant "prohibits the production, generation, or storage of electricity that is used in[9] a commercial enterprise." Luminant asserts that the words of the restrictive covenant should

---

covenant running with, touching, and encumbering the Property, binding upon the Grantee and all successors in interest or title, transferees, vendees, lessees, mortgagees, and assigns who are owners and/or users of the Property.

[8]For example, the City asserts in its brief that Luminant's interpretation of the restrictive covenant would prohibit

a for-profit corporate office that installs solar panels on the roof to reduce its electric bill; a for-profit hospital that uses a backup generator in power outages; a for-profit tech company that uses an uninterruptable power supply to protect servers hosting its website; a for-profit law office that uses laptop computers with batteries to provide legal advice; or even a for-profit lawn service using cordless equipment to cut grass or blow leaves.

To that, Luminant responds: "Like a data center, a for-profit corporate office, a for-profit hospital, a for-profit tech company, a for-profit law office, and for-profit lawn service are all permissible uses under the terms of the Restrictive Covenant," but, Luminant goes on to add, the restrictive covenant would not permit "any of these kinds of commercial enterprises to produce, generate, or store electricity on the property."

[9]Elsewhere in its brief, where "used in" might go, Luminant phrases this as "enabl[ing]" or "in relation to" or "in connection with" such enterprises.

be given their "plain meaning," which Luminant asserts should be the meaning "in the context" of the restrictive covenant using the "energy industry" meaning where appropriate.[10]

This background is helpful for the resolution of this interlocutory (aka pretrial) appeal, but we do not resolve the interpretive battle via interlocutory appeal. In a contract case (a restrictive covenant in a deed is a type of contract) there can sometimes be very little daylight between winning on the meaning of the contract for "temporary" purposes, and winning at trial.[11] Nonetheless, we have jurisdiction to decide this interlocutory appeal on the City's first point.[12] But, we decide it on the second.

Via its second point, the City contends that the trial court's temporary injunction order fails to comply with the specificity requirements of Rule 683 of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 683. As discussed below, a temporary injunction is an extraordinary remedy that does not issue as a matter of right. One of the requirements for a temporary injunction is that "irreparable injury" would result without an injunction. The trial court's injunction order stated that Luminant would be irreparably harmed without a temporary

---

[10]For example, Luminant contends that: "The term 'energy storage facility' has a widely understood meaning in the energy industry . . . ."

[11]*See JBrice Holdings, L.L.C. v. Wilcrest Walk Townhomes Ass'n, Inc.*, 644 S.W.3d 179, 183 (Tex. 2022) (quoting *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 279, 280 (Tex. 2018)) ("Restrictive covenants are contracts that run with the land, and are 'subject to the general rules of contract construction.' We review 'a trial court's interpretation of a restrictive covenant de novo.'" (footnotes omitted) (citations omitted)); *Harley Channelview Props., LLC v. Harley Marine Gulf, LLC*, 690 S.W.3d 32, 38 (Tex. 2024) ("Given the *frequently dispositive* nature of injunctive relief—even when granted on a temporary basis—for over a century, the Legislature has authorized appeals from such orders." (emphasis added)); *but see Bienati v. Cloister Holdings, LLC*, 691 S.W.3d 493, 498 (Tex. 2024) (per curiam) ("A probable right to relief [for temporary injunction purposes] is simply that— probable. An appellate court determination that a party has shown a probable right to relief does *not* mean that the party obtaining temporary relief will prevail on the merits based on a fully developed record." (emphasis added)).

[12]*See Bienati*, 691 S.W.3d at 499 ("[A]n appellate decision as to the propriety of a temporary injunction is not advisory, even if it involves a question of law that implicates the merits of the claims presented. The court of appeals had jurisdiction to consider the enjoined board members' appeal.").

injunction pending trial. Our decision turns on whether the trial court's injunction order spelled out the irreparable harm with specificity and in a non-conclusory fashion. Generally speaking, if an injury can be cured with money, it is not legally "irreparable." In large part, the trial court's injunction order relies on a legal doctrine to relieve Luminant of showing "irreparable injury." The legal doctrine relied on by the trial court presumes harm or injury sufficient to support an injunction when a legal right regarding land (the restrictive covenant) is infringed. The trial court's temporary injunction order does not set out facts explaining why it is appropriate to use that legal doctrine here, and the remainder of the order sets out irreparable injury in conclusory fashion.[13]

Here, Luminant asked that the restrictive covenant be interpreted based on how it would be understood in the "energy industry," and further indicated that it would give up the restrictive

---

[13]The language of the trial court's order on this point spoke of *both* "irreparable harm" and "irreparable injury" as follows:

> Although *not required in the restrictive covenant context*, the record shows that the [Luminant] Parties have shown they face a probable imminent and *irreparable harm* absent injunctive relief because violation of the Covenant would destroy their specifically bargained-for property right, alter the character of the Property tied to that right, and deprive them of the benefit of their bargain, harms *not susceptible to adequate calculation in money damages*. Accordingly, there is no adequate remedy at law.
>
> . . . .
>
> The [Luminant] Parties have demonstrated a probable right to relief on their claim against the City and the [data center parties] for breach of the Covenant and demonstrated a demonstrable intent by the City and the [data center parties] to act in violation of the Covenant, which supports issuance of a temporary injunction *without proof* of *irreparable injury* or imminent harm. However, the [Luminant] Parties have demonstrated a probable, imminent, irreparable injury should a temporary injunction not be issued.

(Empasis added).

covenant for "an extraordinarily aggressive all-cash bid." No case cited to us by Luminant has relieved an energy company from showing irreparable injury after soliciting an "all-cash bid."

Under these circumstances, we find that, regarding irreparable injury, the trial court's temporary injunction order lacked the specificity required by Rule 683. For reasons set out below, we reverse, and remand.

## I.       The Rule 683 Standard for Injunction Orders

A trial court's injunction order must explain *why* an injunction is necessary. TEX. R. CIV. P. 683; *Transp. Co. of Tex. v. Robertson Transps., Inc.*, 261 S.W.2d 549, 553 (Tex. 1953) ("We interpret . . . Rule [683] to require . . . that the order set forth the reasons why the court deems it proper to issue the writ to prevent injury to the applicant in the interim; that is, the reasons why the court believes the applicant's probable right will be endangered if the writ does not issue."). "The requirement in Rule 683 that the reasons for issuing an injunction be stated in the order could hardly be couched in stronger language. It is mandatory." *State v. Cook United, Inc.*, 464 S.W.2d 105, 107 (Tex. 1971) (Calvert C.J., concurring).

The principles set forth in *Robertson Transports* and *Cook United* remain sound: "These requirements 'are mandatory and must be strictly followed.'" *In re Luther*, 620 S.W.3d 715, 722 (Tex. 2021) (per curiam) (orig. proceeding) (quoting *InterFirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986) (per curiam)). As held by the Texas Supreme Court:

> The Rules of Civil Procedure provide safeguards against an overreaching temporary injunction and to mitigate its effect should one issue. Among these, a trial court may not issue a temporary injunction without notice to the opposing

party; *the order* granting the injunction *must set forth the reasons for its issuance*; and its terms must be reasonably specific and describe the acts restrained in detail.

*Harley Channelview Props., LLC*, 690 S.W.3d at 37 (emphasis added) (citing TEX. R. CIV. P. 681, 683).[14, 15]

Thus, what we discuss here are the specificity safeguards of Rule 683 regarding the trial court's temporary injunction order, and that alone. *See Good Shepherd Hosp., Inc. v. Select Specialty Hosp.*, 563 S.W.3d 923, 928 (Tex. App.—Texarkana 2018, no pet.) ("Because we find that the language of the temporary injunction does not provide the required detail under Rule 683 of the Texas Rules of Civil Procedure, we need not decide whether a temporary injunction should have been issued on this record.").

A.      **Overview of *Issuance* Principles in Furtherance of Rule 683 *Specificity* Review**

As noted above, one of the specificity safeguards is that the temporary injunction order must "give the reasons why injury will be suffered if the interlocutory relief is not ordered." *Cook United*, 464 S.W.2d at 106 (citing *Robertson Transps.*, 261 S.W.2d at 553). Therefore,

---

[14]In sum, Rule 683 is about what is in the trial court's order, not what may be in the record of the injunction hearing: "Even if a sound reason for granting relief appears elsewhere in the record, the Texas Supreme Court has stated in the strongest terms that rule of civil procedure 683 is mandatory." *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 745 (Tex. App.—Dallas 2011, no pet.) (citing *Cook United, Inc.*, 464 S.W.2d at 107 (Calvert, J., concurring)); *see Cook United*, 464 S.W.2d at 106 ("The parties and the court of civil appeals have misinterpreted the opinion of this court in *City of Irving v. Dallas Cnty. Flood Control Dist.*, 383 S.W.2d 571 (Tex.[ ]1964), as holding that if a sound reason exists for the granting of a temporary injunction a court granting such an injunction is excused from complying with the requirement of Rule 683 that the reasons for its issuance shall be set forth in the order.").

[15]Since contempt looms as an enforcement mechanism for a temporary injunction order, Rule 683 is not the only reason that temporary injunction orders must be specific. *See In re Luther*, 620 S.W.3d at 722 ("Temporary restraining orders are subject to the requirements of Texas Rule of Civil Procedure 683, *in addition to* the above principles requiring specificity in orders of any type that may underlie a contempt order." (emphasis added)).

8

before drilling down into the specificity required of the temporary injunction order, we examine general temporary injunction principles, with a focus on the "irreparable injury" requirement.

"A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). "A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Id.* "To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id.*; *State v. Loe*, 692 S.W.3d 215, 226 (Tex. 2024) (citing *Butnaru*, 84 S.W.3d at 204).

Concerning the third element, "[a]n injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204.[16] "[G]enerally, a court will not enforce

---

[16]"The general rule at equity is that before injunctive relief can be obtained, it must appear that there does not exist an adequate remedy at law." *Butnaru*, 84 S.W.3d at 210 (quoting *Republic Ins. Co. v. O'Donnell Motor Co.*, 289 S.W. 1064, 1066 (Tex. App.—Dallas 1926, no writ)). The Butnarus, though, proved to be an exception to that general rule in significant part because their claims involved real estate. *Id.* The Butnarus, via two separate contracts, bought a Ford dealership and the land on which the dealership sat. *Id.* at 201. Ford, though, had a right of first refusal in its contract with the selling dealer. *Id.* When the Butnarus applied to become a Ford dealer, Ford rejected their application. *Id.* Ford assigned its right of first refusal to an existing Ford dealer so that that dealer could acquire the dealership business and the land. *Id.* The Butnarus sued and sought injunctive relief. *Id.* They contended that they were qualified applicants, and under Texas laws and regulations regarding motor vehicle dealerships, Ford could not lawfully reject their application. *See id.* at 206. The Texas Supreme Court held that "a trial court *may* grant equitable relief when a dispute involves real property." *Id.* at 211 (emphasis added). In so doing, it does not appear that the Texas Supreme Court contradicted the *general* rule announced in *Butnaru* that "a court will not enforce contractual rights by injunction." *Id.* Nor does it appear that the court announced a rule of per se harm arising from land ownership (or in the Butnaru's situation, attempted land ownership). *See id.* Instead, the court affirmed the issuance of the injunction based on the evidence in that case under the deferential standard of review regarding issuance. *Id.* ("There is some evidence that the Butnarus desired valuable land located at this specific Del Rio location. . . . [B]ecause the trial court's determination was not an abuse of discretion, the court of appeals should not have substituted its judgment for that of the trial court." (citations omitted)). In any event, *Butnaru* concerned the trial court's issuance of an injunction but was not a Rule 683 review of the specificity of the trial court's injunction order. *See id.*

contractual rights by injunction, because a party can rarely establish an irreparable injury and an inadequate legal remedy when damages for breach of contract are available." *Id.* at 211.[17] "Despite this general rule, however, a movant seeking a temporary injunction to enforce a restrictive covenant is not required to show proof of irreparable injury. Instead, the movant is only required to prove that the defendant intends to do an act that would breach the covenant." *Munson v. Milton*, 948 S.W.2d 813, 815 (Tex. App.—San Antonio 1997, writ denied) (citation omitted). *Munson*'s restrictive covenant exception to the "general rule," however, was not and could not have been an exception to the "general rule" of *Butnaru* because *Munson* was decided in 1997, five years before *Butnaru* was decided in 2002. *See id.* *Munson* drew its general rule, and its exception, from court of appeals authority predating *Butnaru*. *See id.* (citing *Guajardo v. Neece*, 758 S.W.2d 696, 698 (Tex. App.—Fort Worth 1988, no writ)).

Since *Butnaru*, courts have held, "The loss of real property can support a finding of irreparable harm, but not in all cases, nor does the loss of real property relieve the trial court of its obligations under Rule 683." *TPLC29 LLC v. Lock Award Hwy 105 West, LLC*, No. 01-24-00465-CV, 2025 WL 2446034, at *9 (Tex. App.—Houston [1st Dist.] Aug. 26, 2025, no pet.) (mem. op.) (citing *Kotz v. Imperial Cap. Bank*, 319 S.W.3d 54, 58 (Tex. App.—San Antonio 2010, no pet.)). "We agree on the basis of the cited authorities that every piece of real estate is unique, and that this uniqueness may, in an injunction case, constitute some evidence of an irreparable injury; however, that alone is not conclusive." *Kotz*, 319 S.W.3d at 58 (citing *In re*

---

[17]What matters is whether damages can be calculated, not whether they have been. *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 793 (Tex. 2020) (citing *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 423 (Tex. 2011)) (overturning a post-trial permanent injunction despite finding insufficient evidence of damages because "[t]he failures of the . . . plaintiffs' experts to take the necessary steps to connect their opinions to supporting data do not establish that no damages could be calculated").

*Stark*, 126 S.W.3d 635, 641 (Tex. App.—Beaumont 2004, orig. proceeding)). There are, however, other post-*Butnaru* court of appeals cases holding that the requirements to obtain a temporary injunction "change when the dispute concerns the enforcement of restrictive covenants." *Patel v. Wofford*, 349 S.W.3d 50, 54 (Tex. App.—El Paso 2010, no pet.) (citing *Letkeman v. Reyes*, 299 S.W.3d 482, 486 (Tex. App.—Amarillo 2009, no pet.)). "In that instance, the movant need not establish the presence of imminent and irreparable injury, or the presence of actual damages arising from the breach." *Id.* (citing *Letkeman*, 299 S.W.3d at 486).

Luminant cites *Huynh v. Blanchard*, but that is a nuisance case, not a restrictive covenant case. *See Huynh v. Blanchard*, 694 S.W.3d 648, 679 (Tex. 2024) ("If the nuisance is actual (as the jury found here), the imminent harm prerequisite is met when the injury is ongoing, whether in a continuous or recurrent manner; if the nuisance is threatened, the prerequisite is met when injury is imminent and will necessarily be sustained."). *Huynh* quotes, partially, from a court of appeals decision for the proposition that: "'Demonstrable intent to breach a restrictive covenant will support an injunction . . . .'" *Id.* at 679 n.38 (ellipses in original) (quoting *Bankler v. Vale*, 75 S.W.3d 29, 39 (Tex. App.—San Antonio 2001, no pet.)).

Notably, *Huynh* declined to quote the "without any showing" portion of *Bankler*. *Compare id.*, *with Bankler*, 75 S.W.3d at 39 ("Demonstrable intent to breach a restrictive covenant will support an injunction without any showing of irreparable injury or imminent harm.").

Further, *Bankler* did not affirm the issuance of the temporary injunction without first examining whether a remedy at law for the breach of the restrictive covenant would be adequate

11

*Bankler*, 75 S.W.3d at 39 ("This court, however, *must* still determine whether the Vales have an adequate remedy at law." (emphasis added)).  Even though a temporary injunction was sought based on a restrictive covenant, *Bankler* held, "A court will not issue a temporary injunction when there is a plain and adequate remedy at law."  *Id.*  Consequently, *Bankler* upheld the issuance of that temporary injunction on an additional finding, "[i]f the injunction were dissolved, allowing the Board to raise and spend the assessment, the Board would be unable to pay any judgment the Vales may be awarded against it.  We cannot find the trial court abused its discretion in finding the Vales lacked an adequate remedy at law."  *Id.*

In any event, the requirements of Rule 683 remain.  *See Kotz*, 319 S.W.3d at 58 ("[The parties] cite us to no authority, and we have found none, stating that the trial court is relieved of the mandatory requirements of Rule 683 in cases involving real estate."); *TPLC29 LLC*, 2025 WL 2446034, at *9 ("[N]or does the loss of real property relieve the trial court of its obligations under Rule 683.").

### B.      The Irreparable Injury *Specificity* Requirement

Having examined the issuance requirements, we begin by noting why those requirements matter to the specificity analysis:  "A temporary injunction [order] must adequately address these elements [the three injunction issuance requirements] pursuant to Rule 683 of the Texas Rules of Civil Procedure."  *Caniglio v. Woods*, 593 S.W.3d 856, 857–58 (Tex. App.—Texarkana 2019, no pet.).  Regarding the third element, to satisfy Rule 683, a trial court's injunction order must set forth *facts* supporting the determination that irreparable injury would ensue in the absence of an

injunction. *Id.* at 858 (citing *Good Shepherd Hosp.*, 563 S.W.3d at 929).[18]  Without a recitation of supporting facts, a trial court's temporary injunction order is conclusory.  *Good Shepherd Hosp.*, 563 S.W.3d at 929 (citing *Arkoma Basin Expl. Co. v. FMF Assos. 1990–A, Ltd.*, 249 S.W.3d 380, 389 n.32 (Tex. 2008) ("'conclusory' is defined as '[e]xpressing a factual inference without stating the underlying facts on which the inference is based'" (alteration in original) (quoting BLACK'S LAW DICTIONARY (8th ed. 2004))).[19]

## II.  The Standard of Appellate Review for Compliance with Rule 683

"When a temporary injunction order does not adhere to the requirements of Rule 683 the injunction order is subject to being declared void and dissolved."  *InterFirst Bank San Felipe, N.A.*, 715 S.W.2d at 641.  There, the Texas Supreme Court did not announce a standard for appellate review of a trial court's compliance with Rule 683.  *Id.*  Instead, the Court observed that the trial court's injunction order did not set the case for trial, as is required by Rule 683, and for that reason, "declare[d] the temporary injunction void and order[ed] that it be dissolved."  *Id.* Thus, though *InterFirst Bank San Felipe, N.A.* did not announce a de novo standard of review,

---

[18]*See also Clark v. Hastings Equity Partners, LLC*, 651 S.W.3d 359, 373 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (citing *Cook United*, 464 S.W.3d at 106) ("It is not enough simply to recite that irreparable harm will ensue; the trial court must explain the reasons *why* such injury will result."); *Kotz*, 319 S.W.3d at 56 ("Merely stating that 'irreparable injury will result' if injunctive relief is not granted does not comply with the specificity requirements of Rule 683."); *City of Corpus Christi v. Friends of the Coliseum*, 311 S.W.3d 706, 708 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.) ("When a temporary injunction is based in part on a showing that the applicant would suffer irreparable harm if the injunction is not issued, Rule 683 requires the order to state *precisely why* the applicant would suffer irreparable harm." (emphasis added)).

[19]*See also Kotz*, 319 S.W.3d at 56–57 (citing *Arkoma Basin Expl. Co.*, 249 S.W.3d at 389 n.32) ("The trial court fails to set forth any underlying facts to support its finding that 'irreparable injury in [the Mans'] possession and use of the Subject Property' will occur, making the court's finding conclusory." (alteration in original)); *El Tacaso*, 356 S.W.3d at 744 (citing *Arkoma Basin Expl. Co.*, 249 S.W.3d at 389 n.32).  "To comply with rule 683, the trial court must set out in the temporary injunction order the reasons it believes the applicant will suffer injury if it does not grant the injunction.  The reasons must be specific and legally sufficient, and not mere conclusory statements." *Indep. Cap. Mgmt., L.L.C. v. Collins*, 261 S.W.3d 792, 795 (Tex. App.—Dallas 2008, no pet.) (citation omitted) (citing *Cook United*, 464 S.W.2d at 106; *Robertson Transps.*, 261 S.W.2d at 553).

the decision's approach is consistent with such review. *See id.* Subsequent decisions of the Texas Supreme Court have likewise assessed Rule 683 compliance in a manner consistent with de novo review but without expressly pronouncing a standard of review. *Qwest Commc'ns Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000) (per curiam) (citing *InterFirst Bank San Felipe, N.A.*, 715 S.W.2d at 641) ("These procedural requirements are mandatory, and an order granting a temporary injunction that does not meet them is subject to being declared void and dissolved."); *In re Luther*, 620 S.W.3d at 722 (finding, without stating a standard of review, that "[t]he temporary restraining order in this case does not meet [the requirements of Rule 683]"). Our Court has followed this example. *See, e,g.*, *Caniglio*, 593 S.W.3d at 857–58.[20]

The requirements of Rule 683 apply to the trial court's order itself and cannot be satisfied from the record. *Harley Channelview Props., LLC*, 690 S.W.3d at 37 ("the order"); *Cook United*, 464 S.W.2d at 106 ("shall be set forth in the order"). But the reviewing court can use the record to gain familiarity with the case to gauge the appropriate level of specificity required, in that case, by Rule 683. *See Robertson Transps.*, 261 S.W.2d at 550 ("A preliminary statement of the factual background of this case will serve to point up the questions before this court for determination.").

---

[20]Some courts of appeal have conducted Rule 683 in this fashion, while calling it "abuse of discretion" review. *See, e.g.*, *Kotz*, 319 S.W.3d at 58 (citing *Qwest*, 24 S.W.3d at 337) ("If the court's order granting a temporary injunction does not comply *on its face* with the specificity requirements of Rule 683, *it constitutes an abuse of discretion* and is thus void." (emphasis added)). Functionally, we perceive no outcome-determinative difference between the approach of this Court, and the approach of sister courts describing this as abuse of discretion review. Placing de novo Rule 683 specificity review under the abuse of discretion umbrella could be reconciled by application of the principle that, even in abuse of discretion review of temporary injunction issuance, "[a] trial court has no discretion to misapply the law . . . and thus we review its legal determinations de novo, based on current law." *Tex. Educ. Agency v. Hous. Indep. Sch. Dist.*, 660 S.W.3d 108, 116 (Tex. 2023).

## III.    Analysis

On April 2, 2025, Luminant wrote, "[W]e are not willing to remove the deed restriction without significant compensation in return.  If that is something you would like to discuss we can consider any proposals but for now we cannot consider removing the restriction."  The next day, Luminant wrote that it might let go of the restrictive covenant if it got "an extraordinarily aggressive all-cash bid."  Luminant solicited such a bid:  "If that works for you, please reply with an indication of your interest."

These statements by Luminant matter.  "[G]enerally, a court will not enforce contractual rights by injunction, because a party can rarely establish an irreparable injury and an inadequate legal remedy when damages for breach of contract are available."  *Butnaru*, 84 S.W.3d at 211; *Sharyland Water Supply Corp.*, 354 S.W.3d at 423 ("[T]he availability of a legal remedy foreclosed Sharyland's suit for an injunction . . . .").  Regarding availability of a legal remedy, the City points to "all-cash bid," and urges that "the undisputed evidence reveal[s] that [Luminant] *could* be adequately compensated with money damages[.]"  For its part, Luminant urges that the trial court's order satisfies Rule 683, and that abuse of discretion review *of issuance* applies:  "To the extent the City challenges the trial court's weighing of the evidence presented at the hearing regarding whether the [Luminant] Parties indicated they could adequately calculate monetary damages for breach of the restrictive covenant . . . ."

Therein lies the rub; the trial court's order does not set forth what *facts* would support a finding one way or the other whether Luminant's damages could or could not be calculated.  Likewise, the parties provide this Court with cases on whether or not, as stated in the trial court's

order, "the [c]ovenant . . . supports issuance of a temporary injunction without proof of irreparable injury or imminent harm," but the trial court's order itself does not indicate what precedent it relies on for that proposition, nor does the trial court's order set forth which *facts* would support the application of such a legal rule under the circumstances of this case.[21]

The requirements of Rule 683 are "safeguards against an overreaching temporary injunction and . . . mitigate its effect should one issue." *Harley Channelview Props., LLC*, 690 S.W.3d at 37. One of the safeguards is that "the order granting the injunction must set forth the reasons for its issuance." *Id.*

Under the circumstances of this case, we find that, concerning the irreparable injury requirement, the trial court's temporary injunction order failed to satisfy the specificity requirements of Rule 683.

## IV. Conclusion

For reasons set forth above, we declare the temporary injunction order void, we order that it be dissolved, and we remand to the trial court for further proceedings.

Jeff Rambin
Justice

---

[21]Consequently, by our overview, *see supra* section I.A., we do not make any ruling or decision, but instead observe that the parties cite courts of appeals decisions regarding restrictive covenants and injunctions, none of which involve the precise facts at issue here.

DISSENTING OPINION

I respectfully dissent from the decision of my colleagues.

I do not find an abuse of discretion in the trial court's factual findings underlying its order; nor do I find any legal error in the trial court's order. Informed by the trial court's factual findings supporting its determinations, and in light of the nature of the injunction, I would also affirm the trial court's order as being sufficiently specific under Rule 683.

Since the outcome of the majority opinion moots consideration of the scope of impermissible conduct during the period of the injunction, I will likewise not address it.

Charles van Cleef
Justice

Date Submitted:     July 8, 2026
Date Decided:       July 22, 2026